RECEIVED
MAY - 3 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ANDREW SCHMIDT | CIVIL ACTION NO. 6:15-2526 (LEAD)<br>*Applicable to All Member Cases* |
| VERSUS | JUDGE DOHERTY |
| CAL-DIVE INTERNATIONAL,<br>INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Currently pending before the Court are two motions to dismiss [Doc. Nos. 21, 36] filed by all plaintiffs in these consolidated suits. Pursuant to their motions, plaintiffs seek dismissal of defendants' special motions to strike [Doc. Nos. 21, 36], arguing defendants have failed to meet their prima facie burden of showing they are entitled to the relief requested. [Doc. 26-1, p. 1; Doc. 36, p. 2] For the following reasons, plaintiffs' motions are GRANTED.

**I.     Factual and Procedural Background**

    **A.     The Schmidt Litigation**

Plaintiff Andrew Schmidt was formerly employed by Cal Dive International, Inc. ("Cal Dive") as a commercial diver. On April 7, 2010, Mr. Schmidt suffered a brain injury due to decompression sickness contracted while surfacing from a work-related dive. *Cal Dive Intern., Inc. v. Schmidt*, 2016 WL 279044, *1 (5th Cir.). On April 19, 2012, Schmidt sued Cal Dive, alleging the injury left him permanently disabled. [Doc. 21-1, p. 2] Schmidt was represented by attorneys Thomas R. Edwards and Joseph W. Walker. Cal Dive filed a counterclaim for reimbursement of

maintenance and cure, recission of the employment contract, damages and attorneys' fees, alleging Schmidt had purposefully and wilfully concealed his medical history from Cal Dive. [Case No. 12-930, Doc. 18, p. 5] Trial was scheduled to commence before the Honorable Richard T. Haik on October 21, 2013. [Id. at Doc. 64] However, six days before trial was scheduled to begin, Cal Dive and Schmidt reached a settlement agreement of all claims. *Cal Dive* at *1.

### B. The Cal Dive Litigation

Post-settlement, Cal Dive continued to surveil Schmidt and collect evidence about the degree of his injury. *Id.* On October 15, 2014, Cal Dive and Underwriters Severally Subscribing to Lloyd's Policy PE 903008 ("Lloyds")[1] filed suit against Schmidt, Edwards, Walker and the administrators of certain structured settlements. Cal Dive and Lloyds were represented by Kyle Schonekas, Joelle Evans, and Andrea Timpa, of the law firm Schonekas, Evans, McGoey & McEachin, L.L.C. ("the Schonekas defendants"). Essentially, the suit alleged Schmidt committed perjury by making material, fraudulent misrepresentations during the Schmidt litigation, and but for the perjury and fraudulent misrepresentations, Cal Dive and Lloyds would have never entered into the settlement. [Case No. 14-3033, Doc. 1, ¶¶ 33-37] By their suit, Cal Dive and Lloyds sought rescission of the settlement agreement, reimbursement of litigation expenses in both the Schmidt and Cal Dive litigation, re-litigation of Schmidt's medical claims and damages, sanctions against Smith for bad faith, restitution from Schmidt's counsel of funds paid under the settlement, and a preliminary injunction prohibiting any further disbursement under the structured settlement to Schmidt or his counsel. [Id. at Doc. 75, p. 3] The original complaint stated plaintiffs "do not believe that Edwards

---

[1]Lloyds was Cal Dive's insurer; Cal Dive and Lloyds each funded a portion of Schmidt's settlement. [Case No. 14-3033, Doc. 1, p. 7]

and Walker were aware of Schmidt's fraud," but they nonetheless were unjustly enriched without cause. [Id. at Doc. 1, p. 15] Edwards, Walker and Schmidt each filed motions to dismiss for failure to plead fraud with particularity, failure to state a claim for unjust enrichment and/or restitution, and res judicata. On March 4, 2015, Judge Haik granted the motions and dismissed all claims, concluding "Plaintiffs' allegations fail to state a plausible claim that discovery will lead to the clear and convincing evidence that Schmidt engaged in fraud or other misconduct which prevented Cal Dive from fairly presenting their case." [Id. at Doc. 75, p. 13]

On March 13, 2015, Cal Dive and Lloyd's filed a Rule 59(e) motion to amend the trial court's judgment, arguing "it was legal error for the Court to dismiss Cal Dive's suit with prejudice without leave to amend the Complaint to state additional facts to support their claims." [Id. at Doc. 81, p. 1] In support of the motion, Cal Dive submitted a proposed First Amended Complaint; pursuant to Cal Dive and Lloyds' request, the proposed pleading was filed under seal. [Doc. Nos. 77, 83, 84] According to Schmidt, Edwards and Walker, the proposed First Amended Complaint "openly alleged that not only Schmidt, but his attorneys, Edwards and Walker, engaged in knowing and wilfull misrepresentations of material fact to a federal magistrate and opposing parties and counsel during the October 15, 2013 mediation." [Doc. 21-1, p. 9] On March 19, 2015, counsel for Schmidt sent correspondence to Cal Dive and Lloyds, demanding that certain false allegations in the proposed pleading "be corrected on the record." [Doc. 21-1, p. 10] On April 22, 2015, Cal Dive filed a motion for leave to file a substitute proposed First Amended Complaint in place of the prior First Amended Complaint submitted on March 13, 2015. According to Edwards, Walker and Schmidt, the substitute proposed First Amended Complaint corrected only one of the false allegations contained in the original First Amended Complaint. [Id. at 11]

On May 7, 2015, the trial court denied the Rule 59(e) motion to amend the judgment and denied leave to amend the complaint, finding any amendment would be futile. [Doc. 99 at 6] The Fifth Circuit affirmed, finding Cal Dive and Lloyds did not rely on any fraudulent misrepresentations by Schmidt when settling the underlying suit. *Cal Dive* at *3.

### C.     The Instant Litigation

On October 14, 2015, Schmidt, Walker and Edwards each filed separate lawsuits against Cal Dive, Lloyds, and their attorneys Schonekas, Evans and Timpa, asserting causes of action for defamation, slander and/or libel, tortious interference with a maritime contract, bad faith breach of a Jones Act settlement, wrongful injunction, sanctions, punitive damages, negligence and various Louisiana state law claims. Each plaintiff filed identical suits in Louisiana State Court the same day. On October 22, 2015, plaintiffs dismissed Cal Dive after receiving notice Cal Dive had filed for bankruptcy. As a result of the dismissal of Cal Dive, complete diversity existed over the claims of Schmidt and Walker, and defendants removed those suits on January 8, 2016 to the Western District of Louisiana. On January 21, 2016, the related suits were reassigned to this Court due to the retirement of Judge Haik. On January 29, 2016, this Court consolidated the five suits pending before it.[2]

On February 22, 2016, the Schonekas defendants filed a special motion to strike pursuant to La. Code Civ. P. art. 971. [Doc. 19] On April 1, 2016, Lloyds filed a special motion to strike, arguing the same grounds as the Schonekas defendants. [Doc. 31] In response, plaintiffs filed Rule 12(b)(6) motions to dismiss the special motions to strike, or alternatively, motions for summary

---

[2]Thus, all suits arising out of the Cal Dive litigation are now before this Court, with the exception of Edwards' state court suit, which is identical to the suit he filed in this Court. Edwards' state court suit remains pending at this time. [Doc. 21-1, p. 12]

judgment. [Doc. Nos. 21, 36] Pursuant to their motions, plaintiffs argue defendants' special motions to strike should be dismissed, as defendants have failed to meet their prima facie burden showing they are entitled to the relief requested. [Doc. 26-1, p. 1; Doc. 36, p. 2] After receipt of the briefing and pursuant to plaintiffs' request, the Court issued minute entries suspending the deadlines for plaintiffs' response to the motions to strike until after resolution of plaintiffs' motions to dismiss. [Doc. Nos. 24, 42]

## II.  Applicable Law

Louisiana's special motion to strike, set forth in La. Code Civ. P. art. 971, is the state's "anti-SLAPP" statute. *Lozovyy v. Kurtz*, 813 F.3d 576, 577 (5th Cir. 2015). "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation, which is a phrase used to describe "generally meritless suits brought by large private interests to deter common citizens from exercising their constitutional right to petition or to punish them for doing so." *Yount v. Handshoe*, 171 So.3d 381, 387 (La.App. 5 Cir. 2015); *see also Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009).[3] "In response to the growing prevalence of such suits . . . , states enacted

---

[3]The *Yount* court described the typical SLAPP suit as follows:

> SLAPP suits consist of a civil complaint or counterclaim (for monetary damages and/or injunction) filed against non-governmental individuals and/or groups because of their communications to a government body, or the electorate on an issue of some public interest or concern. Typical examples of SLAPP suits include cases brought by 1) police, teachers, and other public officials and employees against their critics; 2) landlords against tenants reporting problems to the city health inspectors; 3) businesses against consumers reporting problems with their products or services; and 4) by dumps, toxic waste incinerators, bars, and other less-than-attractive enterprises against their NIMBY ("Not–In–My–BackYard") homeowner opponents. At their heart, SLAPP suits threaten a citizen's right to petition because the mere filing of the suit limits public participation in the political process.

*Yount*, 171 So.3d at 387 (citations omitted). The objective of a SLAPP suit is not to win, "but to silence or intimidate those defendants who are haled into court and forced to incur a sufficient enough expense

legislation creating the special motion to strike." *Yount* at 387; *see also Henry* at 169. The Louisiana Legislature enacted its special motion to strike in 1999 as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances in matters of public interest. *Williams v. Nexstar Broadcasting, Inc.*, 96 So.3d 1195, 1201 (La.App. 5 Cir. 2012); *Henry* at 169. "This extraordinary procedural remedy limits discovery, dismisses meritless claims quickly, and awards attorney's fees to the prevailing party." *Yount* at 387.

La. Code of Civ. P. art. 971 reads in pertinent part as follows:

> A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution *in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
>
> . . . .
>
> F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
>
> (1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution *in connection with a public issue*" includes but is not limited to:

---

such that he or she would cease the exercise of their constitutional rights of petition or speech." 123 AM. JUR. 3D *Proof of Facts* § 341 (2011). "SLAPP suit[s] masquerades as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id.* SLAPP statutes are an attempt to define the proper interplay between a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts. Colin Quinlan, *Erie and the First Amendment: State Anti-SLAPP Laws in Federal Court After Shady Grove*, 114 Colum. L. Rev. 367, 367 (2014); *Felis v. Downs Rachlin Martin PLLC*, — A.3d —, 2015 WL 6061859, *12 (Vt.).

> (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
>
> (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
>
> (c) Any written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest.*
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest.*

Louisiana Code of Civil Procedure art. 971 (emphasis added).[4]

"Ruling on a special motion to strike under Article 971 involves a 'burden-shifting analysis for weeding out frivolous claims.'" *Lozovyy v. Kurtz*, 813 F.3d 576, 582 (5th Cir. 2015)(quoting *Henry* at 170). "The defendant-movant must first make a prima facie showing that Article 971 covers the speech or activity at issue–i.e. that the act sued upon was taken 'in furtherance of the . . . right of petition or free speech under the United States or Louisiana Constitution *in connection with a*

---

[4] In *Henry*, the Fifth Circuit "appeared to recognize that application of Article 971 does not create an *Erie* problem when [it] held that 'Louisiana law, including the nominally-procedural Article 971, governs this diversity case.'" *Lozovyy v. Kurtz*, 813 F.3d 576, 582 (5th Cir. 2015)(quoting *Henry*, 566 F.3d at 168-69). However, later cases have cast some doubt on "whether Louisiana's anti-SLAPP law is appropriately asserted in a federal diversity case." *Id.* (quoting *Mitchell v. Hood*, 614 Fed.Appx. 137, 139, n. 1 (5th Cir. 2015)(per curiam)). In *Lozovyy* and a subsequent case, *Block v. Tanenhaus*, — F.3d —, 2016 WL 877497, *2 (5th Cir. 2016), the Fifth Circuit declined to reach this issue in light of the parties' failure to adequately brief same, and proceeded by "assuming the statute does not conflict with the Federal Rules." *Lozovyy* at 583 (internal punctuation omitted); *see also Mitchell v. Hood*, 614 Fed.Appx. 137, 139, n. 1 (5th Cir. 2015)("Because we decide this case on alternative grounds, we need not decide whether Louisiana's anti-SLAPP law is appropriately asserted in a federal diversity case.") Similarly, in this matter, plaintiffs do not argue article 971 does not apply in federal court under the *Erie* doctrine. Accordingly, the Court will presume the statute does not conflict with the Federal Rules.

*public issue.'" Id.* (quoting *Starr v. Boudreaux*, 978 So.2d 384, 388-89 (La. 1 Cir. 2007)) (emphasis added). "Once a prima facie showing is made, the burden shifts to the plaintiff to demonstrate a 'probability of success' on his claim." *Id.* (quoting *Starr* at 389). "If the plaintiff demonstrates a 'probability of success,' 'the trial court denies the [special] motion and the suit proceeds as it normally would'; if the plaintiff fails to demonstrate a 'probability of success,' the trial court dismisses the claim." *Lozovyy* at 582 (quoting *Henry* at 170)(alterations in original). The Fifth Circuit has determined the "'probability of success' standard does not permit courts to weigh evidence, assess credibility, or resolve disputed issues of material fact." *Id.* at 586. "In other words, a non-movant's burden in opposing an Article 971 motion to strike is the same as that of a non-movant opposing summary judgment under Rule 56." *Block v. Tanenhaus*, — F.3d —, 2016 WL 877497, *1 (5th Cir. 2016).

### III. Analysis

Again, plaintiffs argue defendants have failed to carry their prima facie burden and show they are due the relief requested. More specifically, plaintiffs contend "Defendants have failed to make any showing whatsoever that the defamatory language at issue in this case was made 'in connection with a public issue' or 'an issue of public interest,'" and therefore, defendants have failed to meet their initial burden in support of a special motion to strike. [Doc. 21, p. 1; *see also* Doc. 36, p. 2] Plaintiffs contend the defamatory language at issue in this matter "was made in connection with a private dispute between private parties," and involved "an extremely confidential settlement" between Schmidt and his employer Cal Dive. [Doc. 36-1, p. 2; *see also* Doc. 21-1, p. 19] Plaintiffs further contend because "many of the pleadings in the *Cal Dive Suit* were filed under seal," the

defamatory language was not made in connection with a public issue.[5] [Doc. 21-1, p. 20] Thus, plaintiffs conclude, "The record clearly indicates that the defamatory language at issue in this litigation had nothing to do with any public issue." [Doc. 21-1, p. 20] In support of their argument, plaintiffs rely upon *Lyons v. Knight*, 65 So.3d 257 (La. 3 Cir. 2011), and *Yount v. Handshoe*, 171 So.3d 381 (La. 5 Cir. 2015).

In *Lyons*, an interior designer filed suit against her former clients for malicious prosecution and defamation, arising out of allegations the former clients made to police which resulted in the interior designer's prosecution for forgery and theft by fraud. *Id.* at 259. The trial court dismissed the defamation claim on the basis of prescription and granted defendants' special motion to strike the claim of malicious prosecution. *Id.* The appellate court reversed, finding the defamation claim had not prescribed, and defendants had failed to carry their prima facie burden on the special motion to strike. More specifically, the appellate court found defendants had failed to carry their prima facie burden on the special motion to strike, because the "case [was] not about any issue of public concern," but rather, "involve[d] a person with whom a private corporation and private citizens had a business relationship allegedly failing to perform work or provide services in exchange for the money she received."[6] *Id.* at 265. Accordingly, the court concluded the case addressed "a private matter between private interests that does not implicate the public." *Id.* at 266. Because "there [was] no public issue in this case as required for the special motion to strike under Article 971 to be

---

[5]Indeed, it seems plaintiffs contend all defamatory statements as to Edwards and Walker were placed under seal. [Doc. 1, pp. 27, 28, 35, ¶¶ 102, 110, 135-142; Doc. 21-1, p. 9]

[6]According to the *Lyons* court, "speech on matter of public concern [is] speech 'relating to any matter of political, social, or other concern to the community.'" *Id.* at 265 (quoting *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 677 (La. 2006)).

applicable," the judgment of the trial court striking plaintiff's claim was reversed.[7] *Id.*

One of the more thorough discussions of article 971 is found in the Louisiana Fifth Circuit's recent decision in *Yount*. There, a father filed suit for defamation, intentional infliction of emotional distress, invasion of privacy, and cyberstalking, after an internet blogger twice posted a copy of a pornographic drawing authored by the father's minor son that had previously been filed with a court as part of the father's divorce proceeding. In response, the blogger filed a special motion to strike. *Id.* at 384. The trial court found defendant's "blog posts were acts in furtherance of his right of petition and free speech under the United States and Louisiana Constitutions in connection with a public issue pursuant to the definition of such actions provided in Louisiana Code of Civil Procedure Article 971(F)(1)(b)." *Id.* On appeal, plaintiff argued the trial court erred, asserting plaintiff "is a private figure and the claims arise out of comments made in connection with private rather than public issue." *Id.*

The appellate court reversed, reasoning in pertinent part as follows:

> Article 971(F)(1)(b) defines an act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue as "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law." We find this language to be ambiguous on its face. A statute is ambiguous if it is susceptible to different rational meanings. The language of Article 971(F)(1)(b) can be interpreted in such

---

[7]The Court notes defendants argue *Lyons* is distinguishable because there, the allegedly defamatory statements were made in affidavits to the police and not in a judicial proceeding. [Doc. 26, p. 13; Doc. 31-1, pp. 11-12] This Court's review of *Lyons* finds the place in which the allegedly defamatory statements were made is not as clear as defendants would suggest. The *Lyons* court never identifies which subsection of article 971(F)(1) upon which plaintiff relied. While the case is clear the alleged defamatory statements were set forth in affidavits to police (which presumable would fall under subsection (F)(1)(c)), they may also have been made during plaintiff's criminal prosecution (which would fall under subsection (F)(1)(a)). *See Lyons* at 259 (At plaintiff's criminal prosecution, the State put on its entire case before the trial court entered a directed verdict of acquittal).

a way that the special motion to strike will apply to any and all statements made in connection with *any* issue under consideration by a government body or, alternatively, that the motion will apply only to statements made in connection with *public* issues under consideration by a government body. We believe that the former interpretation leads to absurd consequences. Under this reasoning, (which is the same interpretation used by the trial court), *any* cause of action arising from *any* written or oral statement made in connection with *any* kind of government activity or proceeding would be subject to special motions to strike regardless of whether or not the statements were made in connection with a public issue. Consequently, any party could defame or invade the privacy of a person involved in a divorce proceeding, traffic violation, child custody dispute, marriage, mortgage registration, passport application, or driver's license renewal and be immunized from legal repercussions of damage to others through the use of an extraordinary procedural remedy.

Finding that the language of the statute is susceptible to different meanings and its application could potentially lead to absurd consequences, we must examine the purpose of the law to determine which of those meanings best conforms to the will of the legislature. To that end, we look to the legislative history behind the statute.

. . . .

. . . The legislature expressed its intent for enacting Article 971 in Section 2 of Act 734:

> Section 2. The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation *in matters of public significance*, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly. (Emphasis added.)

The legislature's express desire to encourage participation in matters of public significance clearly suggests that **Article 971 is intended to protect comments made in connection with public rather than private issues under consideration by our governmental bodies**.

. . . .

> Having determined that the language of Article 971 is ambiguous, we next examine the text of the law as a whole to determine its proper meaning. Section (A)(1) is the operative clause of Article 971. It reads, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana constitution *in connection with a public issue* shall be subject to a special motion to strike ..." (Emphasis added.) To interpret subsection (b) as immunizing all statements made in connection with *any* issue, including those private issues that are of no public significance whatsoever, considered by a governmental body, would supercede the operative clause of the statute designed to protect individuals from strategic lawsuits against *public* participation. **Section (A)(1) requires that the acts in question be in connection with a public issue. Had the legislature intended for special motions to strike to apply to *all* suits arising from speech or petition related activities, it would not have included phrases such as "in connection with a public issue" in the statute's operative clause.**[8]

*Id.* at 386-88, 389 (citations omitted; italics in original, bold emphasis added). The Court additionally found "[a] review of Louisiana jurisprudence further supports the interpretation that Article 971 is meant to protect comments relating to public issues." *Id.* at 388. The Court ultimately concluded that because plaintiff's divorce proceedings were "a private domestic matter, [and] not a matter of public significance for purposes of applying the Louisiana anti-SLAPP protections," defendant had "not met his burden of proving that his publication of the pornographic drawing . . . [was] an act in

---

[8]This Court would additionally note unlike the common law jurisdictions in this country, "In Louisiana, alone, relevant written allegations in judicial proceedings can form the basis for a libel action, if false, malicious and made without probable cause." *Id.* at 99; *Waldo v. Morrison*, 58 So.2d 210, 212 (La. 1952)(The common law doctrine that every allegation pertinent to an issue presented for decision in a judicial proceeding is protected by an absolute privilege "has no place in the system of law prevailing in Louisiana"). The Louisiana rule is premised upon the language of the Code Napoleon, as reproduced in La. Civ. Code art. 2315, which provides "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." *Lescale v. Joseph Schwartz Co.*, 116 La. 293, 297 (La. 1905). Other than Louisiana, every jurisdiction in the United States "recognizes an absolute privilege for relevant defamatory matter published in judicial pleadings when the court has jurisdiction of the suit." *Union Service & Maintenance Co., Inc. v. Powell*, 393 So.2d 94, 98 (La. 1980)(Watson, J., concurring); *see also* Jonathan M. Purver, Annotation, *Relevancy of Matter Contained in Pleading as Affecting Privilege Within the Law of Libel*, 38 A.L.R.3d 272 (1971). This Court has found no indication in the legislative history of Article 971 that the Louisiana Legislature intended to abolish the jurisprudence constante regarding this issue by eliminating all defamation actions arising out of judicial proceedings, even over purely private matters.

furtherance of his right of petition or freedom of speech in connection with a public issue." *Id.*[9] The Louisiana Supreme Court denied writs. *Yount v. Handshoe*, — So.3d —, 2016 WL 902078 (La.).

In the matter before this Court, defendants take the position that *any* statement made in a judicial proceeding constitutes a public issue. [Doc. 26, p. 6; Doc. 31-1, p. 9] According to defendants, because the alleged defamatory statements at issue were "made before a . . . judicial proceeding," those statements, by definition, were made in "connection with a public issue." [Doc. 26, p. 8 ("Simply put, matters in pleadings under judicial review are *per se* issues of public interest.")] [Doc. 31-1, p. 9] Defendants argue *Yount* is inapplicable to this case for several reasons: (1) "*Yount* involved statements made on an internet blog, not in a judicial proceeding" [Doc. 31-1, p. 10; *see also* Doc. 26, p. 13]; (2) unlike subsection (F)(1)(b) which the *Yount* court found to be ambiguous, subsection (F)(1)(a) – the subsection at issue in this matter – "is not ambiguous or overly broad" [Doc. 31-1, p. 11]; (3) the special motion to strike cannot be available only where the alleged tortious act addresses a matter of public concern, as such a reading would make the "public issue" language contained in subsections (c) and (d) redundant [Id. at 12]; and (4) the *Yount* court erred in its statutory interpretation by ignoring the express language of the statute – i.e., "[i]f the legislature intended to limit the scope of Article 971 in the context of judicial proceedings, it would have added the qualifier 'in connection with an issue of public interest' as it did in subsection F(1)(c)." [Id. at 13-14] Thus, defendants conclude, "the Cal Dive Litigation constitutes a public issue under the

---

[9] The only reference to the public issue requirement this Court has located from the U.S. Fifth Circuit is found in *Lozovyy*. There, plaintiff argued defendants "never met their initial burden under Article 971 by making a *prima facie* showing that the act sued upon was taken 'in furtherance of the . . . right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Id.* at 580, n. 1 (quoting *Starr v. Boudreaux*, 978 So.2d 384, 388-89 (La.App. 1st Cir. 2007)). However, the Fifth Circuit deemed the argument waived in light of plaintiff's failure to raise the issue in his initial brief. *Id.*

express language of the statute regardless of the subject matter of the litigation. . . ." [Doc. 26, p. 8; *see also* Doc. 31-1, p. 13]

Under subsection (A)(1) of article 971, a SLAPP suit is defined as "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." La. Code Civ. P. Art. 971(A)(1). This language is further defined in subsection (F)(1), which specifies that an "'[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue' includes but is not limited to: (a) [a]ny written or oral statement or writing made before a . . . . judicial proceeding. . . ." *Id.* at 971(F)(1)(a). Section 971(F)(1), in turn, lists four specific types of activity that fall within the language of 971(A)(1). The description of the activity in (F)(1)(c) expressly includes the element that the activity be "in connection with an issue of public interest," and the description of the activity in (F)(1)(d) expressly includes the element that the activity be "in connection with a public issue or an issue of public interest." La. Code Civ. P. Art. 971(F)(1)(c), (d). The descriptions of the activities in (F)(1)(a) and (b) – including the activity here, statements made in a judicial proceeding – do not explicitly contain such an element. Thus, defendants argue the statute does not require that testimony in a judicial proceeding concern a public issue. Stated differently, defendants read the statute as having determined, as a matter of public policy, that all statements made in a judicial proceeding inherently concern a public issue.

The Court finds defendants' construction is inconsistent with the language of subsection (A)(1) – "the operative clause of Article 971" – which governs the scope of the statute generally and requires defendants' exercise of constitutional rights to be in connection with a public issue for the

statute to apply. *Yount* at 389. As in *Yount*, to interpret subsection (a) as immunizing *all* statements made before a judicial proceeding, including those private issues that are of no public significance whatsoever, "would supercede the operative clause of the statute designed to protect individuals from strategic lawsuits against *public* participation." *Id.* (emphasis in original). "Had the legislature intended for special motions to strike to apply to *all* suits arising from speech or petition related activities, it would not have included phrases such as 'in connection with a public issue' in the statute's operative clause." *Id.* (emphasis in original). As further discussed in *Yount*, the legislature's express desire in enacting this statute was "to encourage continued participation *in matters of public significance*." *Yount* at 388 (emphasis in original) (quoting 1999 La. Acts 734). Thus, like the *Yount* court, this Court concludes the "in connection with a public issue" requirement of La. Code Civ. P. Art. 971(A)(1) must be met in any motion to strike under the Louisiana anti-SLAPP statute, regardless of the type of activity. *See also Kirksey v. New Orleans Jazz & Heritage Foundation, Inc.*, 116 So.3d 664, 669 (La.App. 4 Cir. 2013)(plaintiff's underlying lawsuit involved a "matter of public concern," and thus, defendant had satisfied its prima facie burden); *Lamz v. Wells*, 938 So.2d 792, 796 (La.App. 1 Cir. 2006)("The intent of Article 971 is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process"); *Stern v. Doe*, 806 So.2d 98, 101 (La.App. 4 Cir. 2001)("The intent of this statute is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of process"); *Melius v. Keiffer*, 980 So.2d 167 (La.App. 4 Cir. 2008)("The burden of proof begins with the party filing the motion to strike to prove that the cause of action arises from an act in the exercise of his right of free speech regarding a public issue; once proven, plaintiff must then demonstrate a probability of success on the claim"); *Loupe*

*v. O'Bannon*, 2015 WL 2383858, *8 (M.D.La.)(prosecutor who allegedly defamed plaintiff at a bond hearing where plaintiff was a testifying witness failed to show her allegedly defamatory statements were made in connection with a public issue in furtherance of prosecutor's rights of petition or free speech – merely showing the statements "were made during or after a bond hearing in open court" is insufficient to satisfy this burden); *contra In re Succession of Carroll*, 72 So.3d 384, 391 (La.App. 2 Cir. 2011); *Thinkstream, Inv. v. Rubin*, 971 So.2d 1092, 1101 (La.App. 1 Cir. 2007); *Gibbs v. Elliott*, 186 So.3d 667 (La.App. 1 Cir. 2013).[10] Accordingly, the Court finds defendants have failed to carry their prima facie burden by showing the allegedly defamatory language at issue in this case was made in connection with a public issue.

## IV. Conclusion

For the reasons provided herein, the Court finds defendants have failed to carry their prima facie burden of proof. Accordingly, plaintiffs' motions to dismiss defendants' motions to strike [Doc. Nos. 21, 36] are GRANTED, and defendants' special motions to strike [Doc. Nos. 19, 31] are DISMISSED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 3rd day of May, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[10]To the extent defendants rely upon *Brown v. Wimberly*, 477 Fed.Appx. 214 (5th Cir. 2012), *Jeansonne v. Roy*, 156 So.3d 134 (La.App. 3 Cir. 2014), and *In re Succession of Carroll*, 72 So.3d 384 (La.App. 2 Cir. 2011) in support of their argument that any statement made in a judicial proceeding constitutes a public issue, the Court finds no indication in any of those cases that any party raised the public issue element. [Doc. 26, pp. 8-11; Doc. 31-1, p. 10]